**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | | |
|---|---|---|
| **ZAINAB HUSSEIN ABED**, | ) | |
| | ) | |
| Plaintiff, | ) | 03:09-cv-00160-HU |
| | ) | |
| vs. | ) | **OPINION AND** |
| | ) | **ORDER** |
| **MICHAEL J. ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Richard A. Sly
1001 SW 5th Avenue, Suite 310
Portland, OR 97204

Linda S. Ziskin
P.O. Box 2237
Lake Oswego, OR 97035

    Attorneys for Plaintiff

Dwight C. Holton
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

Brett E. Eckelberg
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

OPINION AND ORDER                1

HUBEL, Magistrate Judge:

## Opinion and Order

Currently before the court is plaintiff Zainab Hussein Abed's ("Abed") motion (doc. #33) for fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and Abed's motion (doc. #35) for approval of attorneys fees pursuant to 42 U.S.C. § 406(b) ("§ 406(b)"). The parties stipulate and agree that Abed's counsel (hereinafter "Counsel") should be awarded $7,499.99 in EAJA fees. As to § 406(b), Counsel moves the court for approval of fees in the amount of $10,131.50,[1] or twenty-five percent of Abed's past-due benefits.[2] Based on the factors established in *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817 (2002), and explained in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (en banc), Abed's motions are GRANTED. Counsel is awarded $9,389.00 in § 406(b) fees from which $7,499.99 in EAJA fees must be refunded to Abed.

## Procedural Background

Abed protectively filed applications for Supplementary Security Income ("SSI") benefits under Title XVI of the Social Security Act on July 29, 2004. (Compl. ¶ 4.) Abed's claims for SSI benefits were denied initially and upon reconsideration.

---

[1] As the Commissioner correctly noted, Counsel inadvertently specified the amount of § 406(b) fees being sought as both $10,131.50 and $10,837. (Def.'s Resp. (doc. #39) at 2 n.1; Doc. #35.) However, Counsel's briefing makes clear that the figure she is seeking is $10,131.50. (*See* Mem. Supp. Pl.'s Mot. (doc. #36) at 1, 2.) The mistake was in the total, of back benefits and was high by $2,970 ($40,526-37,556). One fourth of the back benefit error is $742.50 in fees which is the amount sought that is not awarded.

[2] Under 42 U.S.C. § 406(b), the court may award a reasonable fee no more than twenty-five percent of the claimant's retroactive award.

OPINION AND ORDER                    2

(Compl. ¶ 5.) Abed was granted a hearing before an Administrative Law Judge ("ALJ"), who denied Abed's claims on December 28, 2007. (Compl. ¶ 5.) Abed requested a review of the ALJ's decision and, on January 16, 2009, the Appeals Council denied review. As a result, the ALJ's decision became the final decision of the Commissioner and Abed's administrative remedies were fully exhausted. (Compl. ¶ 5.)

On February 9, 2009, Abed sought review in this court, claiming that the Commissioner's decision was not supported by substantial evidence and was based upon errors of law. (Compl. ¶ 6.) On December 2, 2009, Counsel filed her opening brief wherein she claimed that the ALJ improperly rejected opinions of treating doctors; the ALJ made legally inadequate severity findings; the ALJ erred at step 3 in the 5-step sequential analysis; and the ALJ's residual functional capacity("RFC") was incomplete. (Pl.'s Opening Br. (doc. #22) at 12-17.) On February 3, 2010, the Commissioner filed a brief opposing Counsel's position regarding the aforementioned alleged errors by the ALJ. (Def.'s Br. (doc. #26) at 4-20.) In response, Counsel filed a five page reply brief on February 24, 2010. (Pl.'s Reply (doc. #30) at 1-5.)

This court filed an Opinion and Order, which reversed the Commissioner's decision and remanded the case for an award of benefits. (Doc. #31.) Judgment for Abed was entered on August 26, 2010. (Doc. #32.) Abed's motions, which are currently before the court, for EAJA and § 406(b) fees were filed on November 9, 2010, and February 28, 2011, respectively. (Doc. #33; Doc. #35.)

///
///

OPINION AND ORDER                3

**Legal Standard**

**I.   EAJA Fees**

The EAJA effectively increases the portion of past-due benefits to a successful Social Security claimant. *Gisbrecht*, 535 U.S. at 796. EAJA fees are determined by the time expended and the attorney's hourly rate, capped in most cases at $125 per hour. *Id.* EAJA fees are awarded against and paid by the government if Social Security claimants prevail against the United States in court and the government's position in the litigation was not substantially justified. *Id.* Fee awards may be made under both EAJA and § 406(b), "but the claimant's attorney must refund to the claimant the amount of the smaller fee." *Id.* (internal citation and quotation marks omitted).

**II.  Section 406(b) Fees**

   **A.   The Statute**

In Social Security cases, attorney fee awards are governed by § 406(b), which provides in pertinent part:

> (1)(A) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment[.]

42 U.S.C. § 406(b)(1)(A).

   **B.   Controlling Precedent**

*Gisbrecht v. Barnhart*, 535 U.S. 789, 792, 122 S.Ct. 1817 (2002) concerned fees awarded under § 406(b). Specifically, the Supreme Court addressed the question, which sharply divided the Federal Courts of Appeals: "What is the appropriate starting point

for judicial determinations of a reasonable fee [under § 406(b),] for representation before the court?" *Id.*

For the purposes of the opinion, the Supreme Court consolidated three separate actions where the District Court, based on Circuit precedent, declined to give effect to the attorney-client fee arrangement. *Id.* at 797. Instead, the District Court employed a lodestar method whereby the number of hours reasonably devoted to each case was multiplied by a reasonable hourly fee. *Id.* at 797-98. The Court concluded that § 406(b) requires a court to review the contingent-fee arrangement, to assure it yields reasonable results. *Id.* at 807. Congress provided one boundary line, *e.g.*, contingent-fee agreements are unenforceable if they exceed 25 percent of past-due benefits. *Id.* But, within that 25 percent boundary, "*the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered.*" *Id.* (emphasis added).

Courts are instructed to first test the contingent-fee agreement for reasonableness. *Id.* at 808. An award of § 406(b) fees can be appropriately reduced based on (1) the character of the representation; (2) the results achieved; (3) when representation is substandard; (4) if the attorney is responsible for delay; and (5) if the benefits are large in comparison to the amount of time counsel spent on the case. *Id.* The claimant's attorney may be required to submit a record of hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases in order to aid the court's assessment of reasonableness. *Id.* Finally, the *Gisbrecht* court stated that, "[j]udges of our district courts are accustomed to

OPINION AND ORDER                5

making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review." *Id.*

In *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (en banc), the Ninth Circuit reviewed three consolidated appeals and determined that, in each case, the district court failed to comply with *Gisbrecht's* mandate. *Crawford*, 586 F.3d at 1144. In each of the three cases, the claimant signed a written contingent fee agreement whereby the attorney would be paid 25 percent of any past-due benefits awarded. The *Crawford* court noted that contingency-fee agreements, which provide for fees of 25 percent of past-due benefits, are the norm for Social Security practitioners. *Id.* at 1147. However, since the Social Security Administration ("SSA") "has no direct interest in how much of the award goes to counsel and how much to the disabled person, the district court has an affirmative duty to assure the reasonableness of the fee is established." *Id.* at 1149. Performance of that duty begins by asking whether the amount of the fee agreement need be reduced. *Id.*

The district courts' decisions, in each of the consolidated cases, were overruled by the Ninth Circuit because they relied "on lodestar calculations and reject[ed] the primacy of lawful attorney-client fee agreements." *Id.* at 1150 (citing *Gisbrecht*, 535 U.S. at 793, 122 S.Ct. 1817). Specifically, the district courts erroneously began with a lodestar calculation by comparing the lodestar fee to the requested fee award. *Id.* The attorneys requested fees representing 13.94%, 15.12%, and 16.95% of past-due benefits. *Id.* at 1145-47. The *Crawford* opinion noted that in

these stipulated remand cases, the plaintiff's attorney's voluntarily reduced their fee request from the contingency fee agreement's 25%. *See id.* at 1150 n.8 ("The attorneys . . . themselves suggested that the full 25% fee provided for by their fee agreements would be unreasonable.")  If the attorneys had received the 25 percent fee provided for by their agreements, they would have been awarded fees ranging from $19,010.25 to $43,055.75. *Id.* at 1150.  The district courts, however, reduced the contracted fees by between 53.7% and 73.30% and ultimately awarded fees that represented 6.68% to 11.61% of the past-due benefits. *Id.*  The Ninth Circuit went on to state that:

> In *Crawford*, for example, the district court awarded 6.68% of the past-due benefits. From the lodestar point of view, this was a premium of 40% over the lodestar. . . . But from the contingent-fee point of view, 6.68% of past-due benefits was over 73% less than the contracted fee and over 60% less than the discounted fee the attorney requested. Had the district court started with the contingent-fee agreement, ending with a 6.68% fee would be a striking reduction from the parties' fee agreement.  This difference underscores the practical importance of starting with the contingent-fee agreement and not just viewing it as an enhancement.

*Id.* at 1150-51.  In *Washington* and *Trejo*, the district court reduced the already discounted fees claimed by the attorneys by 23% and 47%, respectively. *Id.* at 1151 n.9.

Importantly, the Ninth Circuit also noted that *Gisbrecht* "did not provide a definitive list of factors that should be considered in determining whether a fee is reasonable or how those factors should be weighed[.]" *Id.* at 1151.  They went on to cite *Mudd v. Barnhart*, 418 F.3d 424(4th Cir. 2005), for the proposition that: "The [Supreme] Court did not provide a definite list of factors to be considered because it recognized that the judges of our district

OPINION AND ORDER               7

are accustomed to making reasonableness determinations in a wide variety of contexts." *Id.* (citing *Mudd*, 418 F.3d at 428).

## Discussion

**I.   EAJA Fees**

The parties, though their respective counsel, stipulate and agree that EAJA fees in the amount of $7,499.99 should be awarded to Counsel under 28 U.S.C. § 2412. Counsel has represented to the court that 46.1 hours have been spent on Abed's representation before the district court. (Mem. Supp. Pl.'s Mot. (doc. #36) at 7; Mem. Supp. Mot. EAJA Fees (doc. #34) at 2-3.) Counsel has prevailed against the United States in court and the Government's position in the litigation was not substantially justified. Accordingly, Counsel should be awarded $7,499.99 in EAJA fees to be paid by the government in addition to back benefits. Pursuant to *Astrue v. Ratliff*, 130 S.Ct. 2521 (2010), the award should be made payable to Counsel if the Commissioner confirms that Abed owes no debt to the government through the federal treasury offset program.

**II.  The Fee Arrangement**

Abed and Counsel entered into a contingency-fee agreement which reads:

> I and my attorneys agree that if it is necessary to appeal this case to federal court and if such action is taken, the attorneys' fee *for representation before the court shall be the greater* of the following:
>
> 1.   25% (*twenty-five percent*) of the past-due benefits resulting from my claim or claims (which I understand may exceed $400.00 per hour of attorney work), *or*
>
> 2.   Such amount as my attorneys are able to obtain pursuant to the Equal Access to Justice Act (EAJA). Fees paid pursuant to the EAJA are paid by the U.S.

OPINION AND ORDER                8

> government or agency thereof - not out of
> the claimant's past-due benefits.

(Mem. Supp. Mot. EAJA Fees (doc. #34) at 9-10.)

By its terms, the contingency fee agreement is within the statutory limits. The court will examine whether the fee sought exceeds § 406(b)'s 25 percent ceiling, which requires evidence of total past-due benefits. *Dunnigan v. Astrue*, No CV 07-1645-AC, 2009 WL 6067058, at *9 (D. Or. Dec. 23, 2009). Here, Counsel has stated that Abed will receive approximately $40,526 in retroactive benefits. (Mem. Supp. Pl.'s Mot. (doc. #36) at 2.) As the Commissioner points out, however, Counsel has miscalculated the amount she is due under § 406(b). (Def.'s Resp. (doc. #39) at 2.) The regulations define "past-due benefits" under the SSI program as:

> the total amount of payments under title XVI of the Act, the [SSI] program, including any Federally administered State payments, that has accumulated to you and your spouse because of a favorable administrative or judicial determination or decision, *up to but not including the month the determination or decision is made*.

20 C.F.R. § 416.1503 (2010) (emphasis added).

Here, the court issued its Opinion and Order in August 2010. Thus, for the purposes of § 406(b) fees, past-due benefits must be calculated only through July 2010, which was the month prior to this court's decision. Based on Abed's Notice of Award (doc. #36 Ex. 2), Abed accumulated back payments totaling $28,052.00 from August 2004 through March 2009. Over the ensuing 16-month period, from April 2009, through July 2010, Abed accumulated an additional $9,504.00 in back payments, based on a monthly payment of $594.00. Thus, for the purposes of determining § 406(b) fees, the amount of past-due benefits totals $37,556.00 ($28,052.00+$9,504.00). Twenty-

OPINION AND ORDER                    9

five percent of that amount is $9,389.00. Counsel's § 406(b) request must therefore be reduced by $742.50 to avoid exceeding 25% of past due benefits.

### III. The Reasonableness of the § 406(b) Fee

I turn now to my primary inquiry, the reasonableness of the fee sought, *e.g.*, $9,389.00 in § 406(b), or 25 percent of $37,556 in past-due benefits. After applying the *Gisbrecht* factors, as interpreted by *Crawford*, I find that Counsel has demonstrated that a 25 percent fee is reasonable for this case.

#### A. Character of Representation

Substandard performance by a legal representative warrants a reduction in a § 406(b) fee award, as *Gisbrecht* and *Crawford* make clear. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Examples of substandard representation include poor preparation for hearings, failing to meet briefing deadlines, submitting documents to the court that are void of legal citations, and overbilling one's clients. *Dunnigan*, 2009 WL 6067058, at *11 (citing *Lewis v. Sec'y of Health and Human Servs.*, 707 F.2d 246, 250-51 (6th Cir. 1983)). The performance of Counsel in this case was not substandard. Counsel's briefing on the merits was useful, was of good quality, and it persuaded the court to award Abed benefits despite denials by Disability Determination Services, an ALJ, and the Appeals Council. Accordingly, no reduction is warranted under this factor.

#### B. The Results Achieved

Counsel has won benefits for her client in this case. "The circumstances of the case in which the result is achieved, however, are important to the court's assessment of this factor. The

OPINION AND ORDER                    10

inquiry focuses on whether counsel's efforts made a 'meaningful and material contribution towards the result achieved[.]'" *Dunnigan*, 2009 WL 6067058, at *11 (citing *Lind v. Astrue*, No. SACV 03-01499 AN, 2009 WL 499070, at *4 (C.D. Cal. 2009)).

As to this factor, Counsel points out that she "obtained from this court an order for payment of benefits. This was obtained because the Court agreed with [Abed]'s position that the ALJ's decision was not substantially justified in several key areas, and errors of law were made which deprived [Abed] of benefits to which she was entitled." (Mem. Supp. Pl.'s Mot. (doc. #36) at 4.) The court agrees with Counsel.

This was not a case where the Government eases an attorney's task by conceding the ALJ's errors and agreeing to remand. *See Dunnigan*, 2009 WL 6067058, at *12. Rather, the Government filed a twenty-one page brief which devoted seventeen pages to arguments opposing Abed's allegations. Counsel then filed an additional five pages of arguments on the merits in her reply brief. To resolve the parties' dispute the court issued a thirty-six page Opinion and Order, which demonstrates that, unlike *Dunnigan*, the scope of the case was not limited. *Cf. id.* (noting that the scope of the case was limited to a single issue, whether or not the claimant's condition met the requirements of a listing). Accordingly, this factor does not warrant reduction from the 25 percent fee agreement.

**C.   Dilatoriness**

The court may reduce a § 406(b) fee for delays in the proceedings attributable to the claimant's attorney. *Crawford*, 586 F.3d at 1151. The *Gisbrecht* court observed that a reduction on

OPINION AND ORDER                11

this ground is appropriate if the requesting attorney inappropriately caused delay in proceedings, so that the attorney "will not profit from the accumulation of benefits" while the case is pending. *Gisbrecht*, 535 U.S. at 808.

The court finds *Wojtecki v. Comm'r Soc. Sec.*, No. CV-09-584, 2011 WL 1694462 (D. Or. Apr. 6, 2011), instructive on this matter. In *Wojtecki*, the plaintiff's counsel had requested two extensions of time to file the opening brief, totaling seventy-five days. *Id.* at *3. Plaintiff's counsel also had requested a 30-day extension to file the reply brief. *Id.* Judge Stewart determined that, "[t]hese extensions of time are not excessive and do not suggest any intent to unnecessarily delay the proceedings in order to maximize the attorney's fee award. Thus, no deduction for delay is warranted." *Id.*

Here, on August 27, 2009, Counsel requested a 60-day extension of time to file the Opening Brief in this matter. (Doc. #14, 15.) Counsel requested this extension due to her workload during that time period. (Doc. #15.) Counsel then requested an additional thirty-four[3] days to file the Opening Brief because "of Counsel's holiday schedule and time off for family visits (Counsel's 90-year old mother is currently visiting for 2 weeks, and Counsel plans to spend a week in Los Angeles for Thanksgiving)." (Doc. #18.) On February 18, 2010, Counsel requested a 2-day extension of time to file Abed's Reply Brief. (Doc. #27, 28.) The extensions given to

---

[3] On October 27, 2009, Counsel submitted an amended request to the court because she had erroneously calculated the date in her second motion for extension of time. (Doc. #19, 20.) As a result, Counsel only received an additional thirty days to file the Opening Brief, rather than the thirty-four initially requested. (*Id.*)

OPINION AND ORDER                12

Counsel total 92 days, which is analogous to the 105 total days of extension granted in *Wojtecki*. No evidence in the record suggests that the requests were intended to cause delay in the proceedings, and since the requests were limited in frequency and duration, Counsel will not profit from an accumulation of benefits. Accordingly, as in *Wojtecki*, reduction under this factor is not warranted.

**D. Proportionality of the Fee Request to the Time Expended**

The court may reduce a § 406(b) fee "for . . . benefits that are not in proportion to the time spent on the case." *Crawford*, 586 F.3d at 1151 (citing *Gisbrecht*, 535 U.S. at 808, 122 S.Ct. 1817). The Supreme Court explained, "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order." *Gisbrecht*, 535 U.S. at 808. In making this determination, the court may look to counsel's record of hours spent and a statement of normal hourly billing. *Crawford*, 586 F.3d at 1151.

Counsel has submitted time records in support of her request for EAJA fees indicating that a total of 46.1 hours have been spent on Abed's case, which results in an effective hourly rate of $203.67 ($9,389.00/ 46.1), if the full 25 percent fee was approved. Counsel normally works on a contingent basis and does not have a normal hourly rate. Counsel therefore argues that her fee is reasonable "when considered in context of customary billing rates, risk of non-payment, and other relevant factors[.]" (*Id.* at 5.)

For instance, Counsel points out that the Oregon State Bar ("OSB") 2007 Economic Survey ("the Survey") establishes that the average hourly non-contingent billing rate in Portland is $244 per

OPINION AND ORDER                  13

hour.  (*Id.* at 5-6.)  Apparently, the Survey does not address the issue, but the OSB 1998 Survey establishes that Portland attorneys spend 15% of their time on contingency matters and derive 17% of their income from such matters.  (*Id.* at 6.)  Counsel claims this "establishes that <u>average</u> Oregon attorneys *more than make up in contingency-enhanced rates* for the time they expend on contingency cases they lose (by a factor of 17/15)."  (*Id.*) (emphasis in the original).  Counsel contends that this statistic requires use of a multiplier of 17/15 here.  (*Id.*)

Counsel next claims that, in Social Security cases, there is only a 33.52% chance of winning benefits for the claimant.  (*Id.*)  In order to make for the risk of non-payment, Counsel argues that a contingency multiplier of 2.98 (100/33.52) is warranted to make up for the risk of non-payment.  (*Id.*)  Applying both multipliers to the average hourly rate of $244 produces a rate of $824.07 an hour.  (*Id.*)  Counsel claims this effective hourly rate is the average for all cases in which in which § 406(b) fees are awarded, and is the rate that would properly compensate Counsel for the risk of non-payment.  (*Id.*)  Counsel then states, "in <u>most</u> cases, the § 406(b) award is significantly lower than $824.07 per hour, and so the award in some cases must be higher than $824.07 for the average to be $824.07."  (*Id.* at 7.)

This argument misses the mark entirely.  The Ninth Circuit's decision in *Crawford* made clear that while risk is an appropriate factor to consider in evaluating a § 406(b) fee award, the risk analysis must be specific to the case at bar.  *See also Albert v. Astrue*, No. CV 05-890-CV, 2011 WL 2116987, at *3 (D. Or. Apr. 28, 2011) (rejecting the same lodestar approach for failing to comply

OPINION AND ORDER 14

with *Crawford's* directive that risk analysis should be case specific); *see also Stokes v. Astrue*, No. 09-cv-01264, 2011 WL 3322563 (D. Or. July 8, 2011) (stating that, "the product of the lodestar calculation can at best be of extremely limited utility in assessing the reasonableness of a contingency fee.")

Counsel did attempt to make arguments which she deemed case specific, however. For example, she claims the case was risky because

> the Appeals Council, attorneys specializing in social security law, affirmed the decision of the [ALJ], another specialist in social security law. That means that by the time this case made it to federal court the case had gone through the initial application, reconsideration, a hearing in front of an [ALJ] and an appeal to a council of attorneys whose specific and sole function is [to] review social security disability decisions. That is four levels of intensive review with the fifth one being this appeal to [the] United States District Court. Taking a Social Security case at the federal court for an attorney involves considerable risk.

(Mem. Supp. Pl.'s Mot. (doc. #36) at 9.) The court disagrees with Counsel that these arguments are case specific because the procedural posture delineated above is the same in every Social Security case that reaches federal court.

The court finds *Stokes* instructive in assessing the proportionality of the fee requested by Counsel. In *Stokes*, Judge Papak recommended that the Commissioner's decision be reversed and remanded for a calculation and award of benefits. *Stokes*, 2011 WL 3322563, at *1. The claimant's counsel sought $10,275.59 in § 406(b) fees, or 25% of the retroactive benefits awarded.[4] *Id.* at *4. Counsel had spent 37.5 hours of attorney time on the case,

---

[4] Counsel was previously awarded $6,193.09 in EAJA fees. *Id.* at *1.

OPINION AND ORDER                15

which resulted in an effective hourly rate of $274.02 ($10,275.59/ 37.5). *Id.* at *6. Judge Papak ultimately concluded that, "compensation at an effective hourly rate of $274.02 would not disproportionately overcompensate Stokes' counsel[.]" *Id.*

While I reject Counsel's comparative approach, I find $9,389.00 in § 406(b) fees to be reasonable based on the following reasons. First, the OSB Survey shows that the average hourly non-contingent billing rate in Portland is $244 per hour, which is significantly greater than the $203.67 an hour resulting from a 25% fee award in this case. Additionally, in *Harden v. Comm'r*, 497 F. Supp. 2d. 1214, 1215 (D. Or. 2007), Judge Mosman observed that "[t]here is some consensus among the district courts that 20-40 hours is a reasonable amount of time to spend on a Social Security case that does not present particular difficulty." Judge Mosman also stated that absent unusual circumstances or complexity, "this range provides an accurate framework for measuring whether the amount of time counsel spent is reasonable." *Id.* at 1216. Here, Counsel spent 46.1 hours on this case, which, in the court's view, is slightly more than necessary for the amount work completed before the district court. Nevertheless, had Counsel only spent 40 hours on this matter, a reasonable amount of time under the *Harden* standard, the effective hourly rate would still be $234.73 ($9,389.00/ 40). Certainly $37,556.00 in past-due benefits is not insignificant, but it is not so large as to make a 25 percent fee disproportionate to the time Counsel spent on the case.

In short, *Crawford* made clear that district courts have an "affirmative duty" to assure the reasonableness of a § 406(b) fee award because the SSA "has no direct interest in how much of the

OPINION AND ORDER                    16

award goes to counsel and how much to the disabled person[.]" *Id.* at 1149. I find that a reduction is not warranted in this case after taking into account Counsel's miscalculation.

### Conclusion

For the reasons stated above, Abed's Stipulated Motion For EAJA Fees (doc. #33) and Abed's Motion For Approval Of Attorneys Fees (doc. #35) are GRANTED. Counsel is awarded $9,389.00 in § 406(b) fees less the $7,499.99 awarded in EAJA fees.

IT IS SO ORDERED.

Dated this _21__ day of October, 2011.

/s/ Dennis J. Hubel
_____
Dennis James Hubel
Unites States Magistrate Judge